UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KREATIO SOFTWARE PRIVATE LIMITED, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:23-cv-10273-IT |
| IDG COMMUNICATIONS, INC., | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 22, 2024

TALWANI, D.J.

Plaintiff Kreatio Software Private Limited ("Kreatio") brought this action against Defendant IDG Communications, Inc. ("IDG Communications")[1] asserting three claims: (1) copyright infringement under 17 U.S.C. § 501; (2) misappropriation of trade secrets under 18 U.S.C. § 1836; and (3) misappropriation of trade secrets under Massachusetts General Laws, Chapter 93. Am. Compl. ¶¶ 60–82 [Doc. No. 20]. Now pending before the court is IDG Communications' Motion to Dismiss [Doc. No. 32] pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons to follow, IDG Communications' Motion to Dismiss [Doc. No. 32] is DENIED.

---

[1] In its Amended Complaint [Doc. No. 20], Plaintiff also named International Data Group, Inc., and referred throughout to the two Defendants collectively. See Am. Compl. ¶¶ 6–8 [Doc. No. 20]. Plaintiff subsequently dismissed International Data Group, Inc., from this suit. See Pl. Not. of Vol. Dismiss. [Doc. No. 25].

I.      **Background as Alleged in the Amended Complaint**

The Amended Complaint [Doc. No. 20] alleges the following:

Kreatio is a software development company formed under the laws of, and with its principal place of business in, India. Am. Compl. ¶¶ 5, 22. IDG Communications is an internet publishing company with its principal place of business in Massachusetts, and which derives revenue from demand generation and data services. Id. ¶¶ 7, 18, 19.

Kreatio OneReg ("OneReg") is one of Kreatio's software applications that creates registration forms for demand generation and data services. Id. ¶¶ 25–26. IDG Communications was licensed to use OneReg on a monthly Software as a Service ("SAAS") basis. Id. ¶ 30.

Kreatio Hermes Application Programming Interface Version 2018 ("Hermes") is another one of Kreatio's software programs. Id. ¶ 9. Hermes is a GDPR-compliant[2] software system for demand generation and data services; it is "interoperable" with OneReg. Id. ¶¶ 12, 28.[3] Kreatio registered Hermes with the U.S. Copyright Office in December 2022. See id., Ex. 1, Cert. of Registration [Doc. No. 20-1].

In or around 2017, IDG Communications began to work on its own GDPR-compliant software system but fell behind in developing it. See id. ¶¶ 32–34. Concerned that it would fail to meet GDPR compliance deadlines, IDG Communications approached Kreatio about licensing the Hermes program, which was already GDPR-compliant. Id. ¶ 35.

---

[2] The GDPR is the General Data Protection Regulation of the European Union.

[3] Two systems are "interoperable" if they can work with or use the parts of each other. See Interoperability, Merriam-Webster, https://www.merriam-webster.com/dictionary/interoperability (last accessed Mar. 20, 2024).

In May 2018, Kreatio agreed to license Hermes to IDG Communications on the same terms as OneReg. Id. ¶ 36. In June 2018, IDG Communications requested access to a "black box"—that is, a read-only replica—of Hermes for use in troubleshooting. Id. ¶ 37.[4] Kreatio provided IDG Communications with access to a "black box" version of Hermes for troubleshooting purposes for three weeks and on the express condition—to which IDG Communications agreed—that IDG Communications not develop any software based on Hermes. Id. ¶¶ 38–39. The license agreement for Hermes stated in relevant part that the parties agree:

> a) [that] Kreatio Hermes constitutes Kreatio's valuable trade secrets and contains confidential and trade secret material as well as know-how and other intellectual property rights (whether or not any rights are registered or pending or otherwise) belonging to Kreatio; b) that the confidential and trade secret material of Kreatio shall be and shall remain the sole property of Kreatio, and no title or intellectual property rights in the confidential and trade secret material or in any modification or extension thereof shall pass to the user; c) that the user agrees to use Kreatio's confidential and trade secret material for the limited purpose as specified in Kreatio's license agreement; d) that the user will not transfer, modify, adapt, merge, translate, reverse engineer, de-compile, disassemble, decrypt, or create derivative works based on Kreatio's Hermes software; e) that the user will not remove or hide any copyright notice or proprietary notices included in Kreatio Hermes; f) that the user will not copy or duplicate any features, functions or graphics of Kreatio Hermes or create, build, or reproduce similar or competitive software to Kreatio Hermes; and g) that the user will not take any copies of Kreatio Hermes without prior written agreement of Kreatio.

---

[4] Plaintiff asserts slightly different facts in its Opposition to Defendant's Motion to Dismiss [Doc. No. 36] regarding when IDG Communication received access to the read-only copy of Hermes for limited use in troubleshooting. Compare Am. Compl. ¶¶ 36–37, 40 [Doc. No. 20] with Pl.'s Opp. to Def.'s Mot. to Dismiss 2 [Doc. No. 36]. For purposes of this Order, the court relies on the facts as alleged in the Amended Complaint [Doc. No. 20].

Id. ¶ 16. IDG Communications has never been licensed to copy, modify, or create derivative works of either Hermes or OneReg. Id. ¶ 29.

In March 2020, IDG Communications terminated use of Hermes, effective August 2020. Id. ¶ 42. Kreatio alleges that while IDG Communications had access to Hermes, IDG Communications developed its own GDPR-compliant system by copying and creating a derivative work of Hermes—thereby exceeding its authorized use under the parties' agreement and misappropriating Kreatio's trade secrets. Id. ¶¶ 43–49. Kreatio also alleges that IDG Communications made copies of Hermes and distributed those copies as part of its business. Id. ¶ 50.

## II. Standard of Review

When confronted with a motion to dismiss, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The inference from plaintiff's pleaded facts need only be plausible, not conclusive, to survive a motion to dismiss. Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010). A claim is facially plausible if the whole of the pleaded factual content allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

## III. Discussion

### A. Copyright Infringement (Count I)

"To establish copyright infringement, the plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original.'" Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole." Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005). Here, Kreatio has satisfied its initial burden on the ownership of a valid copyright by showing a registered copyright in Hermes; that copyright is entitled to a presumption of validity. Am. Compl. ¶¶ 41, 62 [Doc. No. 20]; Ex. 1, Cert. of Registration [Doc. No. 20-1]. IDG Communications does not dispute this showing for purposes of this motion.

As to the second element, when a plaintiff has shown that the defendant had access, copying can also be proven by demonstrating "substantial similarity." Lotus Dev. Corp. v. Borland Int'l, Inc., 788 F. Supp. 78, 84 (D. Mass. 1992). Kreatio alleges that IDG Communications had access to Hermes through the parties' licensing agreement as well as the black box copy of Hermes that Kreatio provided to IDG Communications on request for troubleshooting purposes, and the court therefore considers whether Plaintiff has sufficiently alleged "substantial similarity."

"The test [for substantial similarity] is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir. 1988). Kreatio alleges that the copyrighted material is substantially similar to the copyright registered software in Hermes based on two assertions: (1) IDG Communications' system would not otherwise be interoperable with Kreatio OneReg; and (2) IDG Communications would not otherwise have been able to complete its GDPR-compliant system in the limited time it had to do

so. Am. Compl. ¶¶ 54–55 [Doc. No. 20]. IDG Communications argues that Kreatio has failed to sufficiently plead unlawful copying because it did not specify which exact portions of the Hermes program IDG Communications allegedly copied. Def.'s Mem. ISO Mot. to Dismiss 5 [Doc. No. 33]. Kreatio contends that such specificity is not required at the pleading stage and that it will produce those details in discovery following entry of a protective order. Pl.'s Opp. to Def.'s Mot. to Dismiss 3 [Doc. No. 36]. Additionally, Kreatio argues that it does not currently possess IDG Communications' allegedly infringing copy, so it is compelled to rely on indirect evidence to meet its burden at this point. Id. at 7.

IDG Communications overstates the specificity required to survive a motion to dismiss. The terms of the parties' license expressly prohibited IDG Communications' use of the software code in Hermes to develop IDG Communications' own software. Am. Compl. ¶ 29. Kreatio alleges that, despite these restrictions, IDG Communications developed its own software by unlawfully copying Hermes. See id. ¶¶ 43–46. Specifically, Kreatio pleads that during the period in which IDG Communications had access to Hermes, between May 2018 and March 2020, IDG Communications developed its own GDPR-compliant system by copying and creating a derivative work of Hermes, and later distributed this work for profit. See id. ¶¶ 43, 48, 50.

The allegations in Kreatio's amended complaint suffice "to raise a reasonable expectation that discovery will reveal evidence of" copyright infringement. Twombly, 550 U.S. at 556. Kreatio need only adduce sufficient facts to "provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In alleging a presumptively valid copyright in Hermes, that IDG Communications had access to the copyrighted material through the parties' licensing agreement and the "black box" copy of Hermes, and asserting two facially plausible theories to prove substantial similarity

6

between Hermes and the allegedly infringing material, Kreatio has succeeded in meeting its burden. When viewing the amended complaint in the light most favorable to plaintiff, Nisselson 469 F.3d at 150, Kreatio's allegations support a reasonable inference of similarity so as to render its infringement claim at least plausible, Iqbal, 556 U.S. at 678, and provide IDG Communications with "fair notice" of the claim as well as the grounds upon which it rests, Twombly, 550 U.S. at 555.

### B. Misappropriation of Trade Secrets (Counts II–III)

To state a claim for misappropriation of trade secrets under Massachusetts law, a plaintiff must establish that "(1) the information is a trade secret; (2) the plaintiff took reasonable steps to preserve the secrecy of the information; and (3) the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret." Incase Inc. v. Timex Corp., 488 F.3d 46, 52 (1st Cir. 2007). Massachusetts law requires a plaintiff to state "with reasonable particularity the circumstances" of the alleged misappropriation. Mass. Gen. Laws c. 93 § 42D(b). A plaintiff may also bring a misappropriation claim under the Defend Trade Secrets Act ("DTSA") if the trade secret is related to a product or service used in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). The standards for misappropriation under the DTSA and the Massachusetts statute are substantially similar. Compare 18 U.S.C. § 1839(5)–(6), with Mass. Gen. Laws c. 93 § 42(1)–(2).

A trade secret is any confidential information used in the plaintiff's business that "gives [the owner] an advantage over competitors who do not know or use it." J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736, 260 N.E.2d 723 (1970) (quoting Restatement of Torts § 757 cmt. b). The burden is on the party claiming trade secret status to identify the specific trade secrets at issue "with clarity that can be understood by a lay person" "and

distinguish what is protectable from that which is not." Sutra, Inc. v. Iceland Express, EHF, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008).

Here, Kreatio pleads that "[t]he program and the information contained within Kreatio Hermes is a trade secret" and that Kreatio took reasonable measures to maintain the secrecy of the program code and information within Hermes. Am. Compl. ¶¶ 68–69 [Doc. No. 20]. IDG Communications contends that Kreatio's descriptions are insufficient because they fail to clarify "what is actually claimed to be a secret" and "do not distinguish between what is protectable from what is not." Def.'s Mem. ISO Mot. to Dismiss 9 [Doc. No. 33]. IDG Communications relies on Trust Safe Pay, LLC v. Dynamic Diet, LLC, 2017 WL 3974949 (D. Mass. Sept. 8, 2017), to argue that Kreatio's misappropriation claims lack the adequate specificity needed to survive a motion to dismiss. In Trust Safe Pay, the plaintiff's misappropriation claim was dismissed for "want of adequate identification of the trade secret in issue." See id. at *9–10. However, in that case, the plaintiff merely referenced an "algorithm"—without specifying what the algorithm did or how it was used. Nor did the plaintiff in Trust Safe Pay allege how the algorithm was valuable to its business, stating only that the "algorithm had a positive effect on [plaintiff's business] and was therefore valuable." Id. at *9.[5]

In this case, however, a layperson is likely to distinguish between what Kreatio deems to be protectable—the Hermes program and the compilation of digital information found therein—and what it does not. See Am. Compl. ¶¶ 68–69 [Doc. No. 20]. Kreatio explains that the Hermes

---

[5] Even then, in Trust Safe Pay, the court only dismissed the plaintiff's claim without prejudice and instructed the plaintiff to file another amended complaint within 21 days. 2017 WL 3974949, at *11.

program is "a GDPR compliant software system for Demand Generation and Data Services." <u>Id.</u> ¶ 12. Kreatio also alleges the value of Hermes to its business; according to the facts stated in the <u>Amended Complaint</u> [Doc. No. 20], IDG Communications was working on its own GDPR-compliant software system but fell behind in developing it. <u>See</u> <u>id.</u> ¶¶ 32–34. IDG Communications approached Kreatio about licensing the GDPR-compliant Hermes program due to concerns that it would not otherwise meet GDPR compliance deadlines. <u>Id.</u> ¶¶ 34–35.

Together, this adequately demonstrates the "advantage" that ownership of Hermes gave Kreatio "over competitors." <u>J.T. Healy & Son</u>, 357 Mass. at 736 (quoting Restatement of Torts § 757 cmt. b). Thus, Kreatio has provided a reasonable amount of detail regarding both the nature of the trade secret it seeks to protect and the basis for its protection. Moreover, Kreatio alleges that it intends to delineate with further particularity its trade secrets within Hermes following entry of a suitable protective order. Am. Compl. ¶¶ 71, 80. [Doc. No. 20]. At this early stage of litigation, Kreatio has adequately identified its trade secret.

As to the third factor of the test, evidence of misappropriation, Kreatio has advanced a plausible theory of misappropriation that is sufficient to survive a motion to dismiss; this theory need not be conclusive. <u>Sepúlveda-Villarini</u>, 628 F.3d at 30. Kreatio alleges that during the time in which IDG Communications had access to Hermes, between June 2018 and March 2020, IDG Communications knowingly acquired Kreatio's trade secrets by improper means and in excess of its authorized use. Am. Compl. ¶¶ 40, 43–46, 72 [Doc. No. 20]. Specifically, Kreatio claims that, upon disclosing the Hermes software and—in particular—a read-only replica of Hermes to IDG Communications, IDG Communications improperly used that information to "develop its own GDPR-compliant software system." Pl.'s Opp. to Def.'s Mot. to Dismiss 9 [Doc. No. 36]. Kreatio also points to the express confidentiality provisions in the parties' licensing agreement

and the limitations pursuant to which Kreatio had provided the black box version of Hermes to IDG Communications, which suffice at this juncture to show that Defendant was on notice that exceeding the scope of its authorized use of Hermes may subject it to legal repercussions. Id. at 2.

In contrast, the plaintiff in Trust Safe Pay provided little to no information surrounding the circumstances of the defendants' allegedly improper use of its trade secret. See Tr. Safe Pay, 2017 WL 3974949, at *9–10. The plaintiff in that case merely alleged that defendants were "bidding on the same keywords Plaintiff used in its algorithms," with no further clarity as to whether the keywords themselves were a product of plaintiff's algorithm or were otherwise uncommon in the industry. Id. at *9.

Viewing these facts as pled and taken as true, alongside Kreatio's allegations that IDG Communications exceeded the scope of its limited license to Hermes in order to develop its own GDPR-compliant program under time constraints, establishes a plausible basis that IDG Communications misappropriated Hermes. Iqbal, 556 U.S. at 678. Kreatio has thus adequately stated a claim for both counts of misappropriation against IDG Communications to survive on a motion to dismiss.

## IV. Conclusion

For the foregoing reasons, IDG Communications' Motion to Dismiss [Doc. No. 32] is DENIED.

IT IS SO ORDERED.

March 22, 2024                    /s/ Indira Talwani
                                  United States District Judge

10