UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KREATIO SOFTWARE PRIVATE LIMITED, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 23-10273-IT |
| IDG COMMUNICATIONS, INC., | ) ) ) |  |
| Defendant. | ) ) |  |

ORDER ON PLAINTIFF'S MOTION TO COMPEL
[Docket No. 106]

December 22, 2025

Boal, M.J.

Plaintiff Kreatio Software Private Limited ("Kreatio") has moved to compel defendant IDG Communications, Inc. ("Foundry") to produce certain source code files to Kreatio in native format for inspection by Kreatio's expert.[1] Docket No. 106.[2] For the following reasons, this Court denies the motion.

---

[1] As more fully discussed below, the motion originally sought de-designation of Foundry's source code from "Attorneys' Eyes Only" to "Confidential" to allow Kreatio's expert, as well as its client representative, Deepak Kumar, to review the source code. At the December 10, 2025, hearing, however, Kreatio withdrew that request.

[2] Judge Talwani referred the motion to the undersigned on November 18, 2025. Docket No. 114.

1

I.      RELEVANT BACKGROUND

    A.    The Parties' Allegations

In this action, Kreatio alleges that Foundry used and copied its copyrighted source code trade secrets to make derivative works and distributed the works without Kreatio's authorization. See generally First Amended Complaint ("FAC") at ¶¶ 48-50, 63. Kreatio asserts three claims: (1) copyright infringement under 17 U.S.C. § 501; (2) misappropriation of trade secrets under 18 U.S.C. § 1836; and (3) misappropriation of trade secrets under Massachusetts law.

Foundry denies Kreatio's allegations. According to Foundry, it hired Kreatio to help it develop software for its lead generation business because it was worried it would not meet a required European General Data Protection Regulation deadline that applies to its original "Hermes" software, H0. Counterclaim at ¶ 17; Docket No. 113 at 5. The parties jointly developed that software, known as H1, but it was mired with performance issues that Kreatio was unable to remedy. Counterclaim at ¶¶ 18, 20. Foundry was therefore forced to independently develop its own software, known as H2. Id. at ¶¶ 22-24. Eventually, H2 replaced H1 so that Foundry no longer needed Kreatio's services. See generally id. Kreatio then brought this action, asserting baseless claims in retaliation for Foundry ending the relationship. Id. at ¶¶ 29-34.

Foundry has asserted several affirmative defenses, including that:

> Tenth Defense
> Kreatio's claims are barred, in whole or in part, because Kreatio's applicable copyright registrations are invalid, in whole or in part, and/or Kreatio is otherwise attempting to exceed the scope of its registration in that Kreatio seeks to protect unprotectable information, such as, inter alia, the functionality of software components, other public or third-party information, facts, ideas, procedures, methods, systems, processes, concepts, principles, or discoveries.

2

Eleventh Defense

> Kreatio's claims are barred, in whole or in part, because critical parts or portions of Kreatio's alleged protected copyrights are invalid because they consist of unprotectable *scenes a faire*. Specifically, elements of Kreatio's alleged copyrighted works are dictated by practical realities, such as by mechanical specifications, software standards and compatibility requirements, as well as standard programming practices, and may not obtain copyright protection as such.

Docket No. 70 at 13-14.[3]

On March 28, 2025, Foundry provided Kreatio with written notice that it intended to rely on the Abstraction-Filtration-Comparison ("AFC") test[4] to challenge Kreatio's copyright infringement claims. Docket No. 113 at 8.

### B. The Stipulated Protective Order

On May 10, 2024, Judge Talwani granted the parties' joint motion for entry of a stipulated protective order. Docket No. 63. The resulting protective order provides three levels of classification for documents. See id. at 2. As relevant here, "HIGHLY CONFIDENTIAL – SOURCE CODE Discovery Material," refers to "any '"CONFIDENTIAL Discovery Material'

---

[3] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

[4] The AFC test is a "three-step analysis of 'abstraction-filtration-comparison' to weed out the unprotectable elements of a computer program and determine substantial similarity." Torah Soft Ltd. v. Drosnin, 136 F.Supp.2d 276, 284 (S.D.N.Y. 2001) (citation omitted). Under this analysis:

> a court must first abstract the program, breaking it into its structural parts at varying levels of abstraction. Next, the court filters out those elements that are not protectable. Finally, the court compares the remaining protectable elements of the plaintiff's program to the defendants' work to determine if substantial similarity exists.

Id. (internal citations omitted).

that a Producing Party reasonably and in good faith believes constitutes or contains a party's confidential, proprietary, and/or trade secret source code or object code" ("Source Code"). Id.

The protective order restricts the persons who may have access to Source Code material. As relevant here, such material may not be shared with a party or a party's representatives. Id. at 4. In addition to the foregoing persons, "Confidential Material," on the other hand, may be shared with a party, its board members, officers, insurers, or employees who are actively involved in the prosecution or defense of this case and have a litigation-related need to know the information. Id. at 3.

In addition, the protective order restricts the manner of disclosure of material designated as Source Code to "in-person Source Code reviews" under certain secure conditions. See id. at 5-7. Among other things, Source Code must be made available to the receiving party's outside counsel and/or experts:

> in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any authorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection. . .

Id. at 5. The receiving party may, however, print limited portions of the Source Code under certain circumstances. See id. at 6.

A receiving party may challenge a designation of protected discovery material under the protective order:

> **Challenge to Designation of Protected Discovery Material**. If the Non-Producing Party objects to a designation as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL (AEO)," and/or "HIGHLY CONFIDENTIAL – SOURCE CODE" it may in writing request that the designation be withdrawn. If the Producing Party disagrees with the written request, then the Parties shall meet and confer within 15 days of receiving the written request in a good faith attempt to resolve or narrow the dispute. If

4

> withdrawal is not stipulated to within this 15 day period, then the Non-Producing Party may seek an order determining whether the confidentiality designation is appropriate. The designation shall remain in effect until the objection is resolved by the Court. The Producing Party shall have the burden of showing entitlement to the "CONFIDENTIAL", "HIGHLY CONFIDENTIAL (AEO)", and/or "HIGHLY CONFIDENTIAL – SOURCE CODE" designation.

Id. at 9.

### C.   Kreatio's Review Of Foundry's Source Code And Expert Disclosures

On February 11 and 12, 2025, Foundry made source code for H0 and H2 available for inspection on a standalone computer that included source code review tools requested by Kreatio and H1 source code files identified by Kreatio. Docket No. 113 at 7. Gary Stringham, Kreatio's technical expert, performed his source code review of H0, portions of H1, and H2 pursuant to the terms of the protective order. Id. at 8. On June 30, 2025, Kreatio served Mr. Stringham's expert report. Id. at 9. On September 1, 2025, Foundry served John Morgan's rebuttal expert report. Id. Mr. Morgan's expert report details his analysis relevant to the AFC test. Id.

In an email dated September 29, 2025, Kreatio objected to the designation of H0 and H2 source code as highly confidential under the protective order and requested de-designation so that its client could review the source code. Id. at 10. On October 9, 2025, Kreatio requested that Mr. Stringham be provided "at least a day or maybe two before his deposition for further source code review." Id. Foundry agreed to make the source code available in their Houston office on Monday, October 27, but objected to Mr. Stringham using the review to develop and express opinions that are not in his report. Id.

Kreatio filed the instant motion on October 10, 2025. Docket No. 106. By the motion, Kreatio sought an order de-designating the source code for H0 and H2 from Source Code material to Confidential under the protective order to allow its expert, Mr. Stringham, as well as

its client representative, Mr. Kumar, to review the material. Id. at 1. In the alternative, it sought an order compelling Foundry to produce the source code in native format directly for inspection by Mr. Stringham and Mr. Kumar. Id. Foundry filed an opposition on October 24, 2025. Docket No. 113.

Subsequent to the parties' filings, Mr. Stringham again reviewed the source code at Foundry's office. Foundry also took his deposition.

This Court heard oral argument on December 9, 2025. At that time, Kreatio, for the first time, withdrew its request for de-designation of the source code to Confidential so that Mr. Kumar could review it. Rather, it requested that Foundry be compelled to produce 32 specific files in native format for inspection by Mr. Stringham.

II.   DISCUSSION

Kreatio seeks to compel Foundry to produce to it 32 source code files in native format "under the same circumstances as [Foundry's] expert." Docket No. 106 at 15. As the party seeking modification of the protective order, Kreatio bears the burden of showing good cause for the modification. Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc., No. 08-158-P-H, 2009 WL 1210638, at *1 (D. Me. Apr. 30, 2009) (citation omitted). Kreatio has failed to meet its burden.

Kreatio argues that a modification of the protective order is warranted because maintaining the current designation prejudices Kreatio. See Docket No. 106 at 9-11, 14-15. According to Kreatio, it had no notice of Foundry's intention to employ the AFC test before Mr. Stringham reviewed the source code for H0, H1, and H2. Id. at 10. Mr. Morgan's expert report was the first indication that Foundry intended to use the AFC test to overcome Kreatio's claims.

Id. It must therefore be allowed an opportunity to perform the same analysis that Foundry performed under the same conditions using the same material. Id. at 11; see also id. at 14-15.

Kreatio should have been on notice of Foundry's intention to challenge the protectability of Kreatio's copyright as early as August 21, 2024, when Foundry filed its answer and affirmative defenses. See Docket No. 70 at 13-14. If that was not clear enough, Foundry served notice of its intention to rely on the AFC test on March 28, 2025. Docket No. 113 at 8. At that time, Kreatio could have sought additional source code reviews and have its expert perform an AFC analysis with sufficient time to serve a timely expert report[5] but it did not do so.

Moreover, Kreatio has failed to show that it cannot perform the analysis it wishes to perform under the conditions set forth in the protective order. While Kreatio is limited to reviewing and analyzing the source code in a secured computer at Foundry's offices, the source code is available in native format. Kreatio's complaint, therefore, is not that it cannot perform the required analysis. Rather, its complaint is one of convenience: it wishes for its expert to be able to review and analyze the source code using his own computer equipment in his own office.

Kreatio, however, has not shown that its own or its expert's convenience should trump the protections of the protective order. Indeed, Kreatio acknowledges that the restrictions that the parties agreed to in the protective order with respect to source code are "typical restrictions for source code agreed to by parties at the outset of a case because source code is typically considered highly confidential." Docket No. 106 at 4. Nevertheless, Kreatio argues that such protections are no longer necessary because H0 and H2 are no longer in use and were decommissioned. Docket No. 106 at 13. Kreatio, however, has not cited to any authority that

---

[5] At the December 9, 2025, hearing, counsel for Kreatio was clear that Kreatio is not seeking to reopen the record to serve a supplemental or rebuttal expert report and is not seeking an extension of any scheduling order deadlines.

source code loses its trade secret protection or its value when it is no longer in use by its owner, especially under the facts of this case.

Here, Foundry has taken the position that H1 was mired with performance issues that Kreatio was unable to remedy, which necessitated the development of H2 by Foundry.  See Counterclaim at ¶¶ 17-18, 20, 22-24.  Regardless of whether H2 source code is still in use by Foundry, therefore, Kreatio could review H2's source code and determine why H2 succeeded where H1 failed.  This information would be valuable to Kreatio because Kreatio works for Foundry's competitors and it could use what it learns to improve the software it develops for those customers.  See Docket No. 113 at 13.  As such, there is good reason for adhering to the procedures that the parties agreed to with respect to source code even if H0 and H2 are no longer in use.  Accordingly, this Court finds that Kreatio has not shown good cause to modify the protective order.

III.   ORDER

For the foregoing reasons, this Court denies Kreatio's motion.

　　　　　　　　　　　　　　　　　　　  /s/ Jennifer C. Boal
　　　　　　　　　　　　　　　　　　　JENNIFER C. BOAL
　　　　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE